IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| HESS BUSINESS PRODUCTS AND SERVICES, LLC AND TODD M. HESS, in his individual capacity and capacity as Member of Hess Business Products and Services, LLC<br><br>Plaintiffs<br><br>vs.<br><br>POSTNET INTERNATIONAL FRANCHISE CORPORATION<br><br>Defendant. | Civil Action No._____<br><br><br><br>**PLAINTIFFS' COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Hess Business Products and Services, LLC and Plaintiff Todd M. Hess (referred to herein individually as "Plaintiff LLC" and "Plaintiff Hess", respectively and collectively as "Plaintiffs") seek damages, profits, exemplary, treble and punitive damages, lost profits, prejudgment interest, attorneys' fees, costs, and a permanent injunction against Defendant Postnet International Franchise Corporation (referred to herein as "Defendant") in association with their breach of contract and willful efforts to compete unlawfully against Plaintiffs by stealing and using Plaintiffs' trade secrets, poaching its clients and interfering with its business relationships, and harming its business and reputation, and their unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1 *et seq*.

## THE PARTIES

1. Plaintiff Hess Business Products and Services, LLC is a North Carolina Limited Liability Company with a principal place of business located at 308 Givens Street, Waxhaw, State of North Carolina 28173, County of Union. Plaintiff is a buyer and a seller within the meaning of

N.C.G.S. § 25-2-103(1)(a). Plaintiff is also a merchant, as that term is defined by N.C.G.S. § 25-2-104(1).

2. Plaintiff Todd M. Hess, in his individual capacity resides at 3003 Ocaso Ct, Matthews, State of North Carolina 28104, County of Union and in his capacity as a Member of Hess LLC has a principal place of business located at 308 Givens Street, Waxhaw, State of North Carolina 28173, County of Union.

3. Defendant Postnet International Franchise Corporation is a private company with its principal place of business located at 143 Union Blvd., Ste 600, Lakewood, Colorado 80228. While Defendant is a registered corporation operating under the laws of the State of Nevada, Defendant is registered to transact business in the State of North Carolina. Defendant is a seller within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a). Defendant is also a merchant, as that term is defined by N.C. Gend. Stat. § 25-2-104(1).

## NATURE OF ACTION

4. This action arises under the Defendant Trade Secrets Act ("DTSA") 18 U.S.C. § 1836 *et seq.* and certain statutory and common law of the State of North Carolina including breach of contract, unfair and deceptive trade practices pursuant to N.C. Gen. Stat. §75-1.1, *et seq.*, and misappropriation of trade secrets under the North Carolina Trade Secrets Protection Act ("NCTSPA") N.C. Gen. Stat. § 66-152 *et seq*. Plaintiff's claims arise from Defendant's activities in association with Defendant providing franchise services and products and failures to act in connection therewith with the business Plaintiff previously operated under the name of PostNet at 5922 Weddington Rd, Ste A5, Matthews, North Carolina 28104 county of Union in this judicial district.

5. Furthermore, Plaintiffs seek relief pursuant to 28 U.S.C. § 2201 since an actual and justiciable controversy exists concerning whether Defendant's conduct amounts to intentional and willful misappropriation of Plaintiffs' trade secrets in violation of DTSA and NCTSPA.

## JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the laws of the United States. Plaintiff asserts claims against Defendants under the Defend Trade Secrets Act ("DTSA") pursuant to 18 U.S.C. § 1836 *et seq*.

7. Additionally, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, diversity of citizenship with the amount in controversy exceeding the sum or value of $75,000, exclusive of interest and costs pursuant to 28 U.S.C. § 1332(a)(1).

8. Venue is proper under 28 U.S.C. § 1391(a) in the Western District of North Carolina, Charlotte Division since a substantial part of the events or omissions giving rise to the claims have occurred in this judicial district.

9. Defendant purposefully avails themselves to this District through the delivery and sale of goods and services offered in association with the franchise services and products they provide. Hence, the sales of goods and services offered in association with Plaintiff's previous operation of a retail location at 5922 Weddington Rd., Ste A5, Matthews, North Carolina 28104 in the County of Union subjects Defendant to personal jurisdiction in this District.

## FACTUAL BACKGROUND

10. Plaintiff organized and registered Hess Business Products and Services, LLC as a business operating as a LLC in the State of North Carolina on December 16, 2010. Defendant and Plaintiffs entered into a franchise agreement ("Franchise Agreement") on December 22, 2010, included herein as Exhibit A, and an addendum to the franchise agreement ("Addendum") on

December 22, 2010, included herein as Exhibit B. No additional amendments or addendums had been executed in association with the Franchise Agreement.

11. Defendant sent to Plaintiffs a cease-and-desist letter dated October 3, 2024 ("Cease-and-Desist Letter") ordering Plaintiffs to "1. Immediately cease and desist from using any and all customer data belonging to PNI. 2. Return all customer data, in any form, to PNI by end of business October 7, 2024. 3. Confirm in writing by October 7, 2024 that you have complied with these demands."

12. Defendants also enclosed with the Cease-and-Desist Letter, a letter from Ryan Farris, the Chief Operating Officer for Defendant, conveying to Plaintiffs that Plaintiffs' rights under the Franchise Agreement have been terminated. The Cease-and-Desist Letter and letter terminating Plaintiffs' rights are enclosed as Exhibit C.

13. Indeed, the poor print quality of one of the copies of the Cease-and-Desist Letter sent to Plaintiffs, as shown in Exhibit C, is a testament to and proof of Defendant's inability to print good quality copies in their business operations. Note, for example, the streaking lines that are on the actual document sent to Plaintiffs.

A. **Franchise Agreement Between the Parties**

14. The Franchise Agreement required Plaintiffs to pay Defendant $29,900. (Franchise Agreement, ¶ 3.1.)

15. The Franchise Agreement further required payment of a monthly royalty of 5% of the gross sales of the center. (*Id.* at ¶ 3.2.)

16. Plaintiffs also made a payment at least in the amount of $94,900 in addition to any amount required to cover sales and use taxes. (*Id.* at ¶ 3.5.)

17. In addition to the monthly royalty Plaintiffs were required to contribute 2% of the

gross sales of the center to a fund that was managed solely by Defendant allegedly for maintaining, administering, directing, conducting, and developing the preparation of advertising, marketing, public relations, and/or promotional programs and materials, and any other activities Defendant believes will benefit the System. (*Id.* at ¶¶ 9.1-9.3.) The Franchise Agreement defines the system as "a unique and distinctive system relating to the establishment and operation of retail stores which provide business and consumer services and products." (*Id.* at Recitals A.)

18. Plaintiffs timely made payments of all the amounts required under the Franchise Agreement.

19. The Franchise Agreement identified the duties of Defendant in which Defendant failed to fully comply. (*Id.* at ¶¶ 4.1-4.13.) For example, PostNet failed to provide initial and continuing advice and assistance to Plaintiffs in the operation of the center (*Id.* at ¶ 4.9.) While such advice was to be provided as Defendant deemed appropriate, apparently Defendant deemed it appropriate to provide such advice.

20. Defendant also failed to provide the "start-up advertising program" as provided by the Franchise Agreement (*Id.* at ¶ 4.10) Indeed, all costs associated with the startup of the store were assumed by Plaintiffs. Furthermore, Defendant failed to consistently provide Plaintiffs with any advertising, marketing, public relations, and/or promotional programs and materials benefits in association with the 2% fee described above.

21. Defendant failed to provide a follow-up training visit thirty to sixty days following the opening of the center whereby such training was to consist of a minimum of one-and-a-half days and a maximum of two calendar days on-site at the center. (*Id.* at ¶ 4.12.)

22. Defendant also failed to conduct inspections of business premises and evaluations of the center's management and operations, in order to assist Plaintiffs and to maintain the system's

standards of quality, appearance, and service. (*Id.* at ¶ 4.12.)

23. Defendant also failed, during the term of the Franchise Agreement, make available at the time(s) and location(s) selected by it, make other required and optional training programs, seminars, and workshops as it deems necessary and appropriate. (*Id.*)

24. The Franchise Agreement also required Plaintiffs to perform a list of duties none of which Plaintiffs were advised that they failed to perform. (*Id.* at ¶¶ 5.1-5.16.)

25. In addition to the startup duties identified above, Plaintiffs "at its expense, shall purchase or lease, and thereafter maintain, such computer hardware (including laptops), software, and firmware, required dedicated telephone and power lines, modem(s), printer(s), and other computer-related accessories or peripheral equipment as PostNet specifies in the Manuals or otherwise in writing." (*Id.* at ¶ 11.1.)

26. Additionally, Defendant required Plaintiffs' "computer systems shall have the capacity to electronically exchange information, messages, and other data with other computers, by such means (including but not limited to the Internet), and using such protocols (e.g., TCP/IP), as PostNet may reasonably prescribe in the Manual or otherwise in writing." (*Id.* at ¶ 11.1.) Defendant maintained "the right from time to time and at any time to retrieve data and information from Store Owner's computer system or obtain data relating to the Center and use it for any purpose both during and after the term of this Agreement. (*Id*.)

27. Plaintiffs had to "shall keep its computer system in good maintenance and repair and, at its expense, shall promptly install such additions, changes, modifications, substitutions, and/or replacements to the computer hardware, software, firmware, telephone and power lines, and other computer-related facilities, as PostNet directs" and "pay the annual software fees as required by PostNet's designated software vendors." (Id.) Notwithstanding the lack of Defendant's

6

involvement in maintaining the operation of such software, Plaintiffs complied with these terms.

28. Inasmuch, Defendant had complete access to the point-of-sale ("POS") software that Plaintiffs maintained on their systems at Defendant's direction. Defendant had unlimited access to obtain all financial information and customer information off of the POS software.

29. Upon information and belief, Defendant failed to download and maintain records on the customer information included on the POS software.

B. **Defendant's Failure to Provide Plaintiff LLC with Competitive Print Production and POS Software**

30. Plaintiffs were left with the requirement to provide all printers and finishing equipment needed to effectively run a profitable printing and finishing business. Plaintiffs invested over $500,000 in capital over the course of its operations while subject to the Franchise Agreement to provide such capabilities.

31. Defendant failed to provide the necessary training resources on how to effectively use this equipment to build a competitive commercial printing and finishing business.

32. Notwithstanding multiple attempts to provide a print production and POS software system in which Defendant encumbered Plaintiffs with such cost, Defendant failed to provide an operational, competitive system for such use. Plaintiffs' only alternative was the development of their own collection of systems, software, and procedures to provide print production and finishing capability with the added ability to prices such sales through POS capabilities to their customers. These proprietary trade secrets are currently in use and continue to be protected in Plaintiffs' commercial printing business currently in operation under the name of Legal Tech & Print.

33. Upon information and belief, Defendant's motivation to continue to direct the commercial printing and finishing capabilities in its business were encumbered after being purchased by a company that already had an ownership interest in a commercial printing business.

34. There were ne efforts by Defendant to migrate and use the print production and POS software systems employed by this other commercial printing business into Defendant's print operations at the stores of its franchisee.

35. The failure to provide any print production and POS software system guidance caused Plaintiffs' capital investment in its printing and finishing equipment to be significantly underutilized causing Plaintiffs a significant loss in income that would otherwise be available from such operations.

C. **Intellectual Property Held by Plaintiff Hess on Behalf of His Clients**

36. In his role as a licensed attorney, Plaintiff Hess advises and manages trademarks and copyrights for his clients. Plaintiff Hess holds his clients' intellectual property on a secured server managed by Plaintiff LLC.

37. Based upon his clients' instructions, Plaintiff Hess will advise Plaintiff LLC with respect to printing and any necessary finishing on behalf of these clients.

38. Upon information and belief, Defendant and not Plaintiff Hess' clients own this intellectual property and seeks to take it and infringe the intellectual property rights of these clients.

D. **Plaintiffs' Proprietary Information Subject to Trade Secret Protection**

39. Plaintiff LLC designs, manufactures, and maintains a collection of printing equipment, finishing equipment, systems, software, and procedures including a POS system used for commercial printing and publishing of customers intellectual property and other informational and marketing-based printed and finished products.

40. Plaintiff LLC has accumulated a significant amount of proprietary trade secret information relating to the design and manufacture of its commercial printing process and systems and has expended considerable resources to develop and maintain this information.

41. Plaintiff LLC's competitive position would be significantly harmed should one of its competitors obtain this trade secret information, and Plaintiff LLC has accordingly taken substantial measures to maintain the secrecy of its trade secrets.

42. Defendant has consistently demonstrated that the collection of printing equipment, finishing equipment, systems, software, and procedures including a POS system used for commercial printing and publishing of customers intellectual property and other informational and marketing-based printed and finished products is something that they are unable to develop and provide to their franchisees.

43. Upon information and belief, since Defendant has been unable to define and manage these types of collections of printing equipment, finishing equipment, systems, software, and procedures including a POS system, they desire to acquire Plaintiffs' trade secret information related to this.

E.  **Loss of Future Business as a Result of the Damage to Plaintiffs' Reputation**

44. Defendant's acquisition of Plaintiffs' customer lists and clients in which Plaintiff Hess provides legal services to would show that Plaintiff Hess as an attorney and Plaintiff LLC through is secure systems would be unable to protect the information of such customers and clients.

45. Allowing Defendant to gain access to this customer and client information would result in significant damage to Plaintiffs' reputation causing a significant reduction in business that would otherwise be available to Plaintiffs.

**FIRST CAUSE OF ACTION**
(Breach of Contract)

46. Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

47. In its letter of October 3, 2024, the Chief Operating Office of Defendant expressly terminated the Franchise Agreement.

48. Defendant breached the Franchise Agreement in numerous ways, including, without limitation, failing to provide initial and continuing advice and assistance to Plaintiffs in the operation of the center; failure to provide the start-up advertising program to Plaintiffs; diverting money away from the advertising and marketing fund for Defendant's other uses; failing to provide a follow-up training on-site at Plaintiffs' center and failure to make other required and optional training programs, seminars, and workshops available to Plaintiffs, and failing to conduct inspections of business premises and evaluations of the center's management and operations, in order to assist Plaintiffs and to maintain the system's standards of quality, appearance, and service.

49. Defendant breached the Franchise Agreement by failing to provide the necessary training resources on how to effectively use the equipment they required Plaintiffs to buy and maintain.

50. Defendant breached the Franchise Agreement by its failure to identify the specifics of and provide the systems and software needed to establish a competitive commercial printing and finishing business.

51. Defendant's promises under the Franchise Agreement cause Plaintiffs to invest capital into printing and production equipment in an amount that exceeded $500,000.

52. Defendant breached the Franchise Agreement through its failure to provide to Plaintiffs identification of the needed printing equipment, finishing equipment, and collection of systems, software, and procedures including a POS system needed to allow Plaintiffs to perform commercial printing.

53. As a consequence of Defendant's breaches of the Franchise Agreement and Defendant's wrongful actions, Plaintiffs have suffered and will continue to suffer irreparable harm and loss and has suffered and will continue to suffer financial and economic loss resulting in damages well in excess of $75,000, a final amount to be shown at trial.

**SECOND CAUSE OF ACTION**
**(Misappropriation of Trade Secrets Pursuant to Defend Trade Secrets Act 18 U.S.C. § 1836 *et seq*)**

54. Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

55. Defendant operates their businesses Postnet International Franchise Corporation in interstate commerce across the United States.

56. As set forth above, Defendant has maliciously taken action to obtain Plaintiffs' trade secrets, and/or conspired to use improper means to misappropriate Plaintiffs' trade secrets.

57. Defendant has improperly profited from Defendant's breaches of the Franchise Agreement with Plaintiffs and has attempted to acquire information and assets that Defendant did not have authority to acquire despite Defendant being aware and having knowledge that Plaitniffs independently developed trade secrets in support of Plaintiffs' business.

58. The trade secrets that Defendant is attempting to misappropriate includes confidential and valuable technical knowledge, engineering specifications, market knowledge, and intellectual and practical knowhow relating to, developed for, and necessary for the successful and profitable operation of commercial printing business.

59. The above-described information qualifies as "trade secrets" under the Defend Trade Secrets Act ("DTSA"), as defined under 18 U.S.C. § 1839(3).

60. Plaintiffs have taken reasonable measures to keep such information secret by engaging employees in agreements that prohibit their use and disclosure of such trade secrets and other such information outside of Plaintiffs' business.

61. Such trade secret information required substantial resources, time and investment by Plaintiffs to create, develop, and/or protect, and it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means, by another person who can obtain economic value from the disclosure or use of the information.

62. These trade secrets relate to products and processes that are used in, or intended for use in, interstate commerce because Plaintiffs provides these products and processes at least in the states of North Carolina and South Carolina.

63. Defendant's continued threats to Plaintiffs in securing Plaintiffs' trade secrets demonstrates Defendants are using, and/or will continue to use malicious tactics to gain access to Plaintiffs' trade secrets unless Defendant is enjoined from continuing such tactics.

64. Defendant's actions described herein constitute a willful and malicious misappropriation of Plaintiffs' trade secrets under 18 U.S.C. § 1836(b)(2).

65. Defendant's attempts to misappropriate Plaintiffs' trade secrets is causing, and threatens to continue to cause, Plaintiffs to suffer irreparable harm, including but not limited to loss of business advantage, loss of exclusivity rights, and loss of its investment in its trade secrets. This harm cannot be adequately remedied at law and requires preliminary and permanent injunctive relief.

66. The DTSA violations of Defendant have been willful and malicious, entitling Plaintiffs to exemplary damages of no more than twice the amount of damages for any actual loss and any unjust enrichment.

67. Plaintiffs demands judgment against Defendant for their violations of the DTSA in the form of compensatory and exemplary damages, preliminary and permanent injunctive relief, prejudgment interest, and such other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
**(Misappropriation of Trade Secrets Under North Carolina Trade Secrets Protection Act N.C. Gen. Stat. § 66-152 *et seq.*)**

68. Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

69. Plaintiffs designs, manufactures, and maintenances of a collection of printing equipment, finishing equipment, systems, software, and procedures including a POS system used for commercial printing and publishing of customers intellectual property and other informational and marketing-based printed and finished products are trade secrets subject to the North Carolina Trade Secrets Protection Act.[1]

70. This information derives independent economic value by not being readily accessible through independent means to competitors such as Dependant, which can and does profit from its use and disclosure.

71. Plaintiffs have taken measures to maintain the secrecy of this information including entering into agreements with employees who have access to this information.

72. Defendant's intimidating actions taken against Plaintiffs constitute an actual and threatened misappropriation and misuse of Plaintiffs' confidential trade secrets.

---

[1] N.C. Gen. Stat. §§66-152 *et seq*.

73. Defendant intends to acquire, disclose, or use the trade secrets of Plaintiffs without express or implied authority or consent of Plaintiffs. Defendants have been unable to arrive at such trade secrets by independent development, reverse engineering, and cannot be obtained from another person with a right to disclose the trade secrets.

74. Defendant has acted willfully and with malice toward Plaintiffs' legitimate interests in protecting its trade secrets and confidential and proprietary information.

## **FOURTH CAUSE OF ACTION**
**(Tortious Interference With Business Relations)**

75. Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

76. Plaintiffs have significant and vital business relationships and expectancies with clients that are in the vicinity of their business location in North Carolina and across state lines throughout the United States.

77. The business relations and expectancies include but are not limited to the clients that Plaintiffs previously provide products and services to and worked with while in their former business location as a result of the reputation that they gained for the type of work that they were able to provide to such clients.

78. Neither Defendant nor any other business occupies Plaintiffs' former business location or even in the immediate area that has the capability of providing these same types of services.

79. Through its attempts to acquire the Plaintiffs' customer information for currently provided products and services, Defendant has maliciously and intentionally acted to prevent Plaintiffs from developing and maintaining its business relationships with its clients.

80. Defendant has willfully and intentionally solicited Plaintiffs' clients, working to induce and pressure them to leave Plaintiffs and become clients of Defendant through unlawful means by intentionally and willfully misappropriating Plaintiffs' trade secrets and engaging in unlawful and prohibited practices.

81. Through its actions, Defendant has prevented Plaintiffs from developing and pursuing business relationships with its clients.

82. Defendant's malicious and deliberate conduct has harmed and continues to harm Plaintiffs. Plaintiffs have had to expend more resources and incur increased costs to maintain its business relationships with clients, all of which has resulted from Defendant's unlawful conduct.

83. Defendant has also caused Plaintiffs to suffer continuing and irreparable harm including unlawfully interfering with and jeopardizing Plaintiffs' client relationships, misappropriating Plaintiffs' trade secrets, and harming Plaintiffs' reputation and goodwill with clients.

84. Defendant further attempts to deprive Plaintiffs of the value of its substantial investments in its trade secrets as well as relationships and goodwill with its clients.

85. Plaintiffs are entitled to damages from Defendant, declaratory and injunctive relief, attorneys' fees and costs, as well as all other available remedies, as set forth in its Prayer for Relief.

## FIFTH CAUSE OF ACTION
**(Unfair and Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1 et seq.)**

86. Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

87. Defendant's actions were in and/or affect commerce and have the tendency or capacity to deceive.

88. Defendant's actions constitute unfair and deceptive trade practices as defined in N.C.G.S. §75-1.1 *et seq*.

89. As a consequence of Defendant's wrongful actions, Plaintiffs have suffered and/or will continue to suffer irreparable harm and loss, has suffered and will continue to suffer financial and economic loss, and is entitled to have those losses trebled and to recover its attorneys' fees.

### SIXTH CAUSE OF ACTION
(Declaratory Judgment Pursuant to 28 U.S.C. § 2201)

90. Plaintiffs incorporate and reallege each of the paragraphs contained above as if fully set forth herein.

91. An actual and justiciable controversy exists concerning whether Defendant's conduct amounts to intentional and willful misappropriation of Plaintiff LLC's trade secrets in violation of the DTSA and NCTSPA, and tortious interference with Plaintiff's business relationships with its customers.

92. Plaintiffs allege Defendant has engaged in intentional and willful misappropriation of Plaintiff LLC's trade secrets as well as unfair and deceptive trade practices against Plaintiffs, by alleging that Plaintiffs took customer information solely belonging to Defendant even though Plaintiffs had no ability to electronically facilitate the copying of such information.

93. Pursuant to 28 U.S.C. § 2201, a judicial determination of the respective rights of the parties is necessary and appropriate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor on each and every claim for relief set forth herein and award Plaintiff relief for the following:

a) Defendant pays to Plaintiffs all damages Plaintiffs has suffered by reason of Defendant's acts complained of herein with the amount to be further proven at trial;

b) Defendant pays to Plaintiffs exemplary and treble damages as allowed by the statutes and laws referenced herein;

c) Defendant pays to Plaintiffs profits lost by Plaintiffs associated with Defendant's acts described herein with the amount to be further proven at trial;

d) Defendant pays to Plaintiffs pre-judgment and post-judgment interest on all monetary damages awarded to Plaintiff, as permitted by law;

e) Defendant be ordered and required to pay punitive damages for their acts described herein;

f) Defendant be ordered and required to pay all costs associated with this action including the attorney's fees and expenses incurred by Plaintiffs;

g) An Order that prevents the Defendant from taking actions that cause harm to Plaintiffs' name and reputation;

h) An injunction:

- Enjoining Defendant from actions that continue to take from Plaintiffs information that disclose Plaintiffs' trade secrets,

- Enjoining Defendants from intentionally and maliciously interfering with Plaintiffs' business relationships with its clients, and

- Enjoining Defendant from disclosing and using any of Plaintiffs' trade secrets and proprietary information;

i) Liquidated damages as required under the parties' agreements;

j) Statutory damages, including multipliers and equitable enhancements, as permitted by law;

k) Disgorgement by Defendants of all ill-gotten gains, as permitted by law;

l) Plaintiff be awarded such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable in this lawsuit.

This 14th day of October, 2024,

    Respectfully Submitted,

    Hess Business Products and Services, LLC and
    Todd M. Hess
    By counsel

    By: s/Todd M. Hess
    Todd M. Hess (Federal ID No. 12925)
    Hess Law, PLLC
    5922 Weddington Rd, Ste A5-195
    Wesley Chapel, NC 28104
    Telephone: (980) 213-6929
    Fax: (980) 300-0089
    toddhess@biziplaw.com
    *Attorney for Plaintiff Hess Business Products and Services, LLC and Attorney pro se for Plaintiff Todd M. Hess*